UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON MARIE IRBY, | ) | Case No. 1:20–CV–01380–SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA E. LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

**I.   Introduction**

Sharon Irby, Plaintiff, seeks judicial review of the final decision of Andrew Saul, the Commissioner of Social Security. The Commissioner denied Irby's application for supplemental security income and disability insurance benefits under Titles II and XVI of the Social Security Act. This matter is before me under 42 U.S.C. § 405(g) and Local Rule 72.2(b). Because the ALJ failed to follow proper procedures, his decision is not supported by substantial evidence. Therefore, I recommend that the Commissioner's final decision be REVERSED and REMANDED for further proceedings under Sentence Four of § 405(g).

**II.  Procedural History**

Irby applied for disability insurance benefits and supplemental security income on September 27, 2017. (ECF No. 13, PageID #: 84). She alleged a period of disability beginning on February 5, 2015, for both claims. (ECF No. 13, PageID #: 84). The Ohio Division of Disability Determination (the "State Agency") initially denied Irby's claims on January 16, 2018. (ECF No. 13, PageID #: 84). The State Agency denied it again on May 17, 2018, on reconsideration. (ECF No. 13, PageID #: 84). The next month, Irby requested a hearing before an ALJ. (ECF No. 13,

1

PageID #: 84). ALJ Eric Westley presided over Irby's hearing on March 7, 2019. (ECF No. 13, PageID #: 84). Irby appeared through counsel Michael Liner and Andrew November and testified. (ECF No. 13, PageID #: 114–29). Bruce Holderead testified as an impartial vocational expert. (ECF No. 13, PageID #: 130–36).

The ALJ issued his decision on May 6, 2019. (ECF No. 13, PageID #: 84–100). He determined that Irby was not disabled under the Social Security Act. (ECF No. 13, PageID #: 84–100). Thereafter, Irby asked the Appeals Council to review and set aside the ALJ's ruling. The Appeals Council denied that request on April 22, 2020. (ECF No. 13, PageID #: 73–75). This timely appeal followed. (ECF No. 1). Irby filed her brief in support on November 27, 2020. (ECF No. 14). The Commissioner timely responded on March 1, 2021, after being granted an extension to respond to Irby's brief. (ECF No. 17). Irby replied on March 15, 2021. (ECF No. 18).

### III. Relevant Background

The ALJ's narratives of the relevant hearing testimony, medical evidence, and opinion evidence provide sufficient background for this Report and Recommendation.[1]

#### A. Testimony

##### 1. Irby's Subjective Statements

> The claimant alleges that she cannot sustain full time employment due to a combination of symptoms from her impairments including depression with anxiety; epilepsy; memory deficit; obstructive sleep apnea; psychomotor deficit; hypoactive thyroid; insomnia; migraine; paraneoplastic syndrome; and other causes of encephalitis and encephalomyeltitis (1E/2)… She also testified that she experiences focal seizures at least once per week and explained that she stares off into the distance and does not hear for approximately one to one-and-a-half minutes when experiencing a seizure (hearing testimony). The claimant also testified that she has difficulty remembering important dates and that she has to keep a calendar for

---

[1] This summary is not meant to be exhaustive. Additional facts are included in the analysis when necessary.

> her doctors' appointments (hearing testimony).

(ECF No. 13, PageID #: 90).

### B. Medical Evidence

> The claimant has a documented history of seizures and was hospitalized from January 30, 2015 through February 5, 2015 after having a generalized convulsive seizure (3F/1-139; 6F/5). An EEG done at MetroHealth during her hospitalization showed multiple electrographic seizures, and a brain MRI showed bilateral mesial temporal lobe changes and showed increased signal involving medial temporal lobes bilaterally suggesting possible herpes encephalitis (3F; 6F/5). She also had blood labs done for autoimmune and paraneoplastic antibodies which returned positive for LG 1 and VGKC (9F/6). She did not have any additional clinical seizure activity during the hospital stay and was discharged home on February 5, 2015[,] with instructions to follow up closely with neurology (3F/138-139).
>
> In June 2015, the claimant was admitted to University Hospitals for further testing which showed a normal continuous EEG; basic CSF labs were non-significant, and she was kept on Keppra 750 mg BID and Lamictal 25 mg daily was added (6F/6). She was diagnosed with autoimmune encephalitis seizures. The claimant continued treating and generally received IVIG infusions once every six months during the relevant period for treatment of autoimmune/ paraneoplastic encephalitis in relation to her seizure condition (6F/11, 13-15, 24, 27-28). Notes from a neurological follow up appointment in April 2018 indicate that the claimant does relatively well for about 4-6 months after her IVIG infusions and that she is also on Keppra 1000 mg BID and Lamictal 150 mg BID (9F/6). Her providers also indicated in treatment notes that the claimant should 'maintain seizure precautions, including, but not limited to: no driving, no tub bathing, no swimming unsupervised, no working at heights or on ladders, near open flame, etc.' (12F/12)…
>
> The claimant continued to follow for treatment of her seizures and limbic encephalitis through 2018. She reported residual symptoms from her encephalitis throughout 2018[,] including memory issues and mood issues (11F/9, 13). She pursued management of her symptoms with medication and tried CellCept[,] but ceased it after a short time[,] as she could not tolerate it, and in September 2018 she indicated [that] she was not interested in trying anything else (11F/8)…

3

> In January 2018, the claimant attended a physical consultative examination with Jeff Kirschman, M.D., and reported s[that] he had a history of focal and absence seizures since 2015 (8F). She reported to Dr. Kirschman that she experiences seizure activity up to four times per day and that they generally last between 1-3 minutes in length (8F/2). She also reported a history of inflammation of the brain since 2015, hypothyroidism [that] was under control with medication, low back pain, migraines, and rheumatoid arthritis in both her knees for two years with pain rated at 8-9/10 (8F/2-3)…
>
> In December 2018, the claimant transferred her medical treatment and care to the Cleveland Clinic. She reported that her seizures were 'nonconvulsive'[,] but there was a lapse in time, and she described it similar to an anxiety attack—her heart races, she gets dizzy, and the[ seizures] last approximately 1-2 minutes (15F/2). She reported [that] she has 2-3 per day[,] but after receiving an IVIG infusion, the frequency is reduced to about three seizures per week, and [that] she reports feeling more functional after an IVIG treatment (15F/2)…

(ECF No. 13, PageID #: 90–92).

**IV.    The ALJ's Decision**

The ALJ issued the following findings of fact:

> 3.    The claimant has the following severe impairments: dysfunction of major joints, epilepsy, obesity, osteoarthritis, and depressive disorder…
>
> 4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1…
>
> The undersigned also considered listing 11. 02[,] Epilepsy, but finds the evidence does not support[] a finding that the claimant meets or equals this listing… [because] the medical records do not meet the requirements of the listing for epilepsy (3F; 6F; 8F; 9F; 15F; 16F).
>
> 11.   The claimant has not been under a disability, as defined in the Social Security Act, from February 5, 2015, through the date of this decision…

(ECF No. 13, PageID #: 86-87, 100).

4

## V. Law and Analysis

### A. Standard of Review

The Court's review is limited to determining whether the ALJ applied proper legal standards and reached a decision supported by substantial evidence. 42 U.S.C. § 405(g); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is "more than a scintilla" of relevant evidence; a reasonable person "might accept [it] as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "It is well established that the party seeking remand bears the burden of showing that a remand is proper…" *Oliver v. Sec'y of Health and Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Under this standard of review, a court cannot decide the facts anew, make credibility determinations, or re-weigh the evidence; if the Commissioner's findings as to any fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference…"). The decisive question is whether the ALJ's conclusions are "substantially supported in the record." *Rogers*, 486 F.3d at 241. If so, then the court must affirm the Commissioner's findings, even if the court does not agree with the Commissioner's decision, or substantial evidence exists to support an alternative result. *Elam*, 348 F.3d at 125 ("The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without the court second guessing him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."). Thus,

5

the movant bears the burden of demonstrating that the ALJ's analysis *lacks* substantial evidence, not merely that substantial evidence supports her position, too. *See Greene ex rel. Greene v. Astrue*, No. 1:10-cv-414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence … that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence … that would allow a reasonable mind to accept the ALJ's conclusion.").

Despite this deference, a court will not uphold the Commissioner's decision if the ALJ failed to apply proper legal standards, *i.e.*, "fails to follow its own regulations," unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). Legal error is not harmless if the "error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* And the court will not remand a case for further administrative proceedings absent prejudice on the merits or a deprivation of substantial procedural rights. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Similarly, if the ALJ failed to "build an accurate and logical bridge between the evidence and the result," then the court cannot uphold the ALJ's decision, even one supported by substantial evidence. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)). This and other 6th Circuit District Courts follow *Sarchet*'s logical-bridge requirement[2] because it ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance

---

[2] *E.g. Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B. The ALJ Failed to Build a Logical Bridge Between the Evidence of Record and the Finding that Irby Is Not Disabled Under Listing 11.02

Irby states three issues: (1) that the "ALJ erroneously failed to properly evaluate the totality of the evidence in the record"; (2) that the "ALJ erred in his determination regarding credibility as it was not supported by substantial evidence and violated Social Security Ruling 16- 3p"; and (3) that the "ALJ committed harmful error when he did not meet his burden at Step Five of the Sequential Evaluation." (ECF No. 14, PageID #: 1010). Irby's first issue is quite broad, and she alleges multiple sub-issues. (ECF No. 14, PageID #: 1019–27). One sub-issue is that the ALJ failed to properly analyze Irby's focal seizures claim under Listing 11.02. (ECF No. 14, PageID #: 1020–21). Irby argues that the ALJ's failure requires remand. (ECF No. 14, PageID #: 1021).

In response, the Commissioner argues that "substantial evidence supports the ALJ's finding" concerning Listing 11.02. (ECF No. 17, PageID #: 1047). After stating the operative regulations and restating the ALJ's finding, the Commissioner observes that Irby "does not articulate which part of Listing 11.02 she believes she met or explain exactly how she satisfied the requirements." (ECF No. 17, PageID #: 1048).

7

Irby's argument is well taken. Because remand is required to address the ALJ's analysis of Listing 11.02, the Court expresses no opinion on the other issues that Irby raises.

At the hearing, Irby discussed her seizure symptoms with the ALJ, describing them as "staring off" for one to one-and-a-half minutes. (ECF No. 13, PageID #: 120). Irby stated that she feels "foggy and disoriented" afterwards. (ECF No. 13, PageID #: 120). It can take her "about two or three minutes to … remember the conversation" that she was having before the seizure. (ECF No. 13, PageID #: 120). She sometimes seizes when she is alone; other times, she seizes when others are around her, and they may try to "tap[ her] to come out of it." (ECF No. 13, PageID #: 120). Irby testified that she had seized just a few days before the hearing and that her daughter had witnessed it. (ECF No. 13, PageID #: 120). She testified that she seizes "at a minimum at least one a week." (ECF No. 13, PageID #: 120). Irby's counsel also discussed Irby's seizures with the ALJ, stating in his opening statement that

> We provided a good start of those records that show her active seizure activity. The crux of the case I think can be settled at listing 11.02. We have witnessed seizures that are occurring at least once a week despite continued prescribed treatment. In fact[,] when she was at the Cleveland Clinic on the 24 hour EEG under medication[,] she seized.

(ECF No. 13, PageID #: 112).

The record also contains ample medical evidence concerning Irby's seizures. (*See* ECF No. 13, Exhibits 3F; 6F; 8F; 9F; 15F; 16F). Irby was hospitalized in early 2015 after a witnessed convulsive seizure. (ECF No. 13, PageID #: 496–562). She was prescribed Keppra and Lamictal (Lamotrigine), both of which are anti-seizure medications, during the relevant time period for this claim.[3] (ECF No. 13, PageID #: 90). She also treated her seizures with intravenous

---

[3] At the hearing, Irby stated that she had been taken off Keppra only a month before the hearing. (ECF No. 13, PageID #: 121).

immunoglobulin therapy ("IVIG") every six months. (*E.g.* ECF No. 13, PageID #: 774, 790). Since 2015, she has tried other medications, such as Cellcept, but her seizures persisted despite the medications. (ECF No. 13, PageID #: 888). In April 2018, Irby reported to a provider that she had experienced "about 4 seizures in the past few weeks." (ECF No. 13, PageID #: 888). In September 2018, she reported to a provider that she was experiencing "more" seizures than before. (ECF No. 13, PageID #: 899). And in December 2018, Irby's provider noted that Irby was experiencing "daily psychic auras [that] at times progress[] to dialeptic seizures…" (ECF No. 13, PageID #: 961). The same provider wrote in Irby's epilepsy health-status report the objective note: "Patient's seizure frequency over [the] past 6 months: 2 (seizures) per day." (ECF No. 13, PageID #: 968).

Listing 11.02 (Epilepsy) has four discrete subparts—paragraphs A, B, C, and D. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 11.02. A claimant can satisfy the listing by meeting the requirements of any one of the four paragraphs. *Id.* Paragraphs A and C concern tonic-clonic seizures, which are convulsive in nature. *Id.* Irby does not claim to suffer convulsive seizures; instead, Irby has demonstrated that she has recurrent focal seizures[4] and absence seizures,[5] which are dyscognitive in nature.[6] (ECF No. 13, PageID #: 120; ECF No. 14, PageID #: 1013, 1021).

---

[4] Focal seizures can occur with or without a loss of consciousness. "Focal seizures without loss of consciousness … may alter emotions or change the way things look, smell, feel, taste or sound. They may also result in involuntary jerking of a body part, such as an arm or leg, and spontaneous sensory symptoms such as tingling, dizziness and flashing lights…. Focal seizures with impaired awareness … involve a change or loss of consciousness or awareness. During a complex partial seizure, you may stare into space and not respond normally to your environment or perform repetitive movements, such as hand rubbing, chewing, swallowing or walking in circles." *Id.*

[5] "Absence seizures … are characterized by staring into space or subtle body movements such as eye blinking or lip smacking. These seizures may occur in clusters and cause a brief loss of awareness." *Epilepsy*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/epilepsy/symptoms-causes/syc-20350093 (last visited July 14, 2021).

[6] "Dyscognitive seizures are characterized by alteration of consciousness without

Thus, her claim should be considered under Listing 11.02's B and D paragraphs, which concern dyscognitive seizures. 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 11.02(B).

To meet paragraph B, a claimant must show that they have "[(1) d]yscognitive seizures (see 11.00H1b), occurring [(2)] at least once a week [(3)] for at least 3 consecutive months (see 11.00H4) [and (4)] despite adherence to prescribed treatment (see 11.00C)." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 11.02(B). Elsewhere in the decision, the ALJ highlighted that Irby:

- has focal seizures, which cause her to "stare off into the distance and … not hear for approximately one to one and a half minutes";

- testified that she had been having focal seizures at least once per week, and that a provider had noted the same frequency; and,

- seized at that frequency and consistency despite treating her seizures and epilepsy Keppra, Lamictal, and IVIG therapy.

(ECF No. 13, PageID #: 90, 92). Nevertheless, the ALJ found that "the evidence does not support a finding that the claimant meets or equals this listing." (ECF No. 13, PageID #: 87 (citing ECF No. 13, Exhibits 3F, 6F, 8F, 9F, 15F, 16F)).

Other than generically citing to six exhibits—which, together, total about 450 pages—the ALJ never explains how he came to that finding. The ALJ's conclusory analysis is troubling because his finding is in conflict with the abovementioned facts—many of which the ALJ directly narrated—that support Irby's claim under Listing

---

convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 11.00H2.

11.02(B).⁷ The analysis also conflicts with the fact that Irby's treatment provider stated in December 2018 that Irby had been having focal seizures twice per day for the past six months. (ECF No. 13, PageID #: 968). And it is even more troubling still that the ALJ did not include that fact in his narrative, despite Irby's counsel specifically discussing it with him at the hearing. (ECF No. 13, PageID #: 112–14).

The Court thus concludes that the ALJ failed to create a logical bridge between the record evidence of Irby's seizures and the ALJ's finding under Listing 11.02. *Blackmon v. Comm'r of Soc. Sec.*, No. 20–CV–1196, 2021 WL 2744656, *9 (N.D. Ohio July 1, 2021); *see also Fleischer*, 774 F. Supp. 2d at 877 ("[T]his Court cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [if] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). This error is not harmless: The ALJ's failure to explain his reasoning at Listing 11.02 prejudiced Irby on the merits of her claim. *Bowen*, 478 F.3d at 746; *see also Wilson*, 378 F.3d at 544–46 (finding that it was not harmless error when the ALJ failed to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).

If the ALJ found any of the evidence discussed above to be inconsistent, or if the ALJ considered other evidence in the record that might have contradicted Irby's claim, then he was obligated to reconcile the conflicting evidence such that a subsequent reviewer

---

⁷ Paragraph D applies to claims in which the claimant seizes only once every two weeks. 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 11.02(D). Irby has consistently alleged that she seizes at least one per week; thus, paragraph B's once-per-week frequency requirement is a better fit for her claim.

11

could follow his reasoning. *Blackmon*, 2021 WL 2744656 at *9. He did not do so. Accordingly, the case must be remanded to the ALJ for further consideration of Irby's claim under Listing 11.02.

## VI. Recommendation

Because the ALJ failed to follow proper procedures, his decision is not supported by substantial evidence. Therefore, I recommend that the Commissioner's final decision be REVERSED and REMANDED for further proceedings under Sentence Four of § 405(g).

DATED: July 19, 2021

*CarmenHenderson*
Carmen E. Henderson
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).